**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**AT CEDAR RAPIDS**

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:16-cv-00202-EJM |
| PAUL HICKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Safeco Insurance Company of Illinois filed a Motion for Summary Judgment seeking a declaration as a matter of law that 1) the default judgment entered against Paul Hicks (Doc. 20) precludes coverage under the Policy for any claim by Gosch against Hicks regardless of whether the claim asserted against the Policy was by Hicks or by Gosch, 2) that Gosch's status as Hicks's "domestic partner" precludes coverage under the Policy for any claim by Gosch against Hicks, and 3) any recovery by Gosch under the Policy's underinsured motorists coverage is limited to $20,000. Because there are no genuine disputes as to any material fact, Safeco is entitled to its requested judgment as a matter of law. FED. R. CIV. P. 56(a).

1. **The Amended Default Judgment Entered Against Hicks in this Action Precludes Coverage for Any Claim by Gosch Against Hicks.**

A federal court is bound by the interpretation of a state's statutes by the state's highest court. *Olympus Aluminum Product, Inc. v. Kehm Enterprises, Ltd.*, 930 F. Supp. 1295, 1310 (N. D. Iowa 1996). In the absence of such interpretation by the state court, the federal court, confronted with an issue of first impression under state law, has the responsibility to predict, as best it can, how the state's high court would resolve the issue. *Id*.

1

Iowa's direct action statute provides only that a judgment creditor who is unable to satisfy a judgment against an insured shall have a right of action against the insurer "to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment." I.C.A. § 516.1 (2016). Gosch does not dispute that Hicks's rights under the Policy have been extinguished. Instead, she argues that the Amended Default Judgment (Doc. 20) was limited to Paul Hicks's rights under the Policy, and not her rights. While that is true, the Court's Amended Default Judgment (Doc. 20) does not address whether Gosch's rights were extinguished as a matter of law by entry of the default judgment against the policy holder, and the Amended Default Judgment (Doc. 20) cannot create rights that Gosch does not already hold. Consequently, this issue is still ripe to be decided on this motion.

Gosch also argues that I.C.A. § 516 has no bearing on this case because there has been no judgment entered against Hicks. But in doing so, Gosch ignores that this is a declaratory judgment action to determine the rights of the parties, and more importantly, that her only potential right to directly recover liability insurance under the Policy is pursuant to I.C.A. § 516.1. *See Fries v. M.F.A. Mut. Ins. Co.*, 122 N.W.2d 925, 927 (Iowa 1963) (Chapter 516 gives a judgment creditor a right to bring suit against an insurance company which does not exist under common law). The plain language of the statute dictates that Gosch's right of recovery is no broader than Hicks could recover if he paid a judgment against him. Put simply by the Iowa Supreme Court, Gosch "stands in the position" of Hicks, which subjects her to any defenses that would be good against Hicks. *Haynes v. Dairyland Mut. Ins. Co.*, 199 N.W 83, 85 (Iowa 1972). Since Hicks can no longer enforce his claim against the Policy, Gosch's claim is also

extinguished. Gosch does not cite one case that holds to the contrary.[1] Safeco requests that this Court grant summary judgment based upon the Amended Default Judgment against Hicks, finding that Gosch is precluded from seeking satisfaction of any judgment against the Policy.

### 2. The undisputed facts establish, as a matter of law, that Gosch and Hicks are "domestic partners" under the Policy.

"The construction of an insurance policy is the process of determining the policy's legal effect; interpretation is the process of determining the meaning of the words used in the policy." *Buckeye State Mut. Ins. Co. v. Moens*, No. C12-4025-MWB, 2013 WL 1196622, at \*5 (N. D. Iowa March 25, 2013). "When the parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court." *Id.* The cardinal rule of constructing insurance policies is that except in cases of ambiguity, the intent of the parties must control, and the court determines the intent of the parties by looking at what the policy itself says. *Id.* If the policy does not define a term, it is given "its ordinary meaning." *Id.* Only when the policy language is susceptible to two <u>reasonable</u> interpretations is there an ambiguity. *Id*. at \*6 (emphasis added). "Ambiguity exists if, <u>after the application of pertinent rules of interpretation to the face of the instrument</u>, a genuine uncertainty results as to which one of two or more meanings is a proper one." *Id.* (emphasis added). "The Court interprets undefined words in the context of the policy as a whole, and avoids interpreting the policy in such a way as to render parts of a contract 'surplusage.'" *The Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 822 (S.D. Iowa 2015).

---

[1] The Iowa Supreme Court has found that an insured and insurer cannot take collective action to defeat coverage after a loss. *See e.g. Aid Ins. Co. (Mut.) v. Chrest*, 336 N.W.2d 437, 440 (Iowa 1983). However, the fact that Gosch does not cite *Chrest*, or any other case that stands for this proposition, is tacit agreement by Gosch that these cases are not applicable to the entry of a default judgment against the insured in a declaratory action in which the injured plaintiff is also a party, and that party did nothing to prevent entry of the default judgment against the insured.

3

The Policy expands the types of coverage applicable to domestic partners (including the provision of underinsured motorists coverage), but excludes liability coverage for the named insured, the named insured's family members, and the named insured's domestic partner. SOF 50 (Doc. 23-2).[2] Such exclusions were established to prevent litigation between a named insured and his or her family members or domestic partner, and the division (or collusion) that can take place as a result of such litigation. *Shelter Gen. Ins. Co. v. Lincoln*, 590 N.W.2d 726, 730 (Iowa 1999) (upholding the validity of the family member exclusion).

The relationship between Gosch and Hicks is exactly the type of domestic partner relationship contemplated by the Policy. If Gosch and Hicks do not qualify as "domestic partners," no one will, and Gosch's proffered interpretation of the Policy would render the provision meaningless, which cannot, as a matter of law, be a reasonable interpretation of the Policy.

The Policy defines a domestic partner as someone who "shares with you the responsibility for each other's welfare." SOF 50 (Doc. 23-2). The Policy then provides specific examples of what constitutes the sharing of "responsibility for each other's welfare." *Id.* Notably, these examples are listed in the disjunctive; two people do not have to fall within all of the examples listed. Instead, if just one of the examples applies,[3] they will be considered "domestic partners" under the Policy.

---

[2] "SOF" citations are to Plaintiff's Statement of Material Facts to Which No Genuine Issues Exists (Doc. 23-2).

[3] The listed specific examples are examples only, and the definition of "domestic partner" is not limited to only those specific examples. *See Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 837 (Iowa 2009) ("[g]enerally, the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition."). Other indicators of domestic partnership may be considered by this Court in determining whether Gosch and Hicks are domestic partners.

Included in the Policy as a specific example indicating domestic partnership is "the sharing in domestic responsibilities for the maintenance of the household." *Id.* As set forth more fully in Safeco's motion, Gosch and Hicks share in many domestic responsibilities for the maintenance of their joint household. For example, Gosch and Hicks both perform cleaning and maintenance duties; they share groceries and cleaning supplies; they both help with things around the house. SOFs 13-16 (Doc. 23-2).

Another specific example provided by the Policy of "sharing in the responsibility of each other's welfare" is "having joint financial obligations, resources or assets." SOF 50 (Doc. 23-2). (emphasis added). Again, this example is listed in the disjunctive. In other words, if the parties have joint financial obligations or resources or assets, they qualify as domestic partners under the Policy. Gosch focuses on the fact that her and Hicks' finances are "for the most part, separate." (D. Appx. at 28, ¶2). This has no bearing on the Court's decision in this case due to the disjunctive language of the policy. In fact, Gosch's admission that Gosch's and Hicks's finances are not entirely separate supports Safeco's argument that Gosch and Hicks are domestic partners. In other words, this is not a balancing test. It does not matter how many financial obligations domestic partners share jointly versus independently. All that matters under the clear terms of the policy is that they do have joint financial obligations, resources or assets.

It is undisputed that Gosch and Hicks do share a joint asset: the 2014 Chevy Cruze. Both Gosch and Hicks' names are on the title, registration, and insurance to the vehicle. SOFs 24-27 (Doc. 23-2). Gosch's explanation as to why the vehicle is a joint asset is immaterial. The Policy does not require a specific reason for the joint nature of the asset. Alternatively, if the Court considers Gosch's explanations for the joint nature of the asset to be material, the reasons she lists only bolster Safeco's argument: Hicks shared in the responsibility for Gosch's welfare

by entering into an agreement to make payments for the car Gosch drives in the event Gosch cannot make the payments because she was unable to enter into a vehicle loan by herself. What could be more indicative of sharing in the responsibility for another's welfare than agreeing to co-sign on a loan so that the other person has a car to drive?

Similarly, it is also undisputed that Gosch is the beneficiary on Hicks's life insurance policy. (D. Appx. at 30, ¶ 14 (Doc. 26-4). The life insurance policy was purchased because "if Paul [Hicks] dies, he leaves his house and other possessions to his children. [Gosch] would have no place to live. Therefore, [Hicks] agreed to allow [Gosch] to take an insurance policy on his life that would pay $150,000 should he die." (D. Appx. at 30, ¶ 14 (Doc. 26-4)). This is further undisputed evidence that Gosch and Hicks share in the responsibility of each other's welfare.

Gosch attempts to distract this Court by repeatedly drawing its attention to immaterial facts, none of which create a factual issue that prevents entry of summary judgment in Safeco's favor. Whether Gosch and Hicks occasionally go on separate vacations does not impact their status as domestic partners. Whether they have separate email accounts has no relationship to their domestic partnership status. Many married couples go on separate vacations, have separate email accounts, and have separate bank accounts.

While it can be determined as a matter of law that Gosch is Hicks's domestic partner pursuant to the criteria set out in definition **4.a.**, **4.b.**, **4.c.(1)** and **4.c.(2)**, the word "includes" in **4.c.** of the definition also leaves open the consideration of evidence of other criteria. *See Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 837 (Iowa 2009) ("[g]enerally, the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition.").

6

Further evidence of Gosch and Hicks' domestic partnership and sharing of responsibility for each other's welfare is that they are listed as each other's emergency contacts. SOFs 41-42 (Doc. 23-2). Hicks is a contributor to Gosch's health savings account. SOF 46 (Doc. 23-2.) Hicks is the primary beneficiary of Gosch's 401(k). SOF 39 (Doc. 23-2). These undisputed facts (and others included in the original briefing) lead to the inevitable conclusion that, as a matter of law, Gosch and Hicks share responsibility for each other's welfare and, therefore, are domestic partners under the Policy.

To avoid application of the clear terms of the Policy, Gosch attempts to characterize her maintaining of the home she shares with Hicks as "rent." (Doc 26-1, p. 4). But this argument is directly contradicted by her admission in her answers to interrogatories where she states:

> 16.     Please state whether you pay rent to Paul Hicks. If so, please state the amount(s) paid, the date(s) upon which payments have been made, and identify any documents reflecting the rental payment arrangement.
>
> **ANSWER**:
>
> No.

SOF 17 (Doc. 23-2, P Appx. 110 (Doc. 23-3)).

In addition, because "rent" is not defined by the Policy, the Court can look to the "ordinary meaning" of the term. The "ordinary meaning" of the term "rent" is set forth in Merriam-Webster's dictionary definition: "usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof; *especially*: an agreed sum paid at fixed intervals by a tenant to the landlord." MERRIAM-WEBSTER, *available at* https://www.merriam-webster.com/dictionary/rent?src=search-dict-box.[4] The ordinary meaning

---

[4] Defendant cites to Black's Law Dictionary for her plain meaning definition; however, "ordinary meaning" does not contemplate the use of legal references. *See The Phoenix Ins. Co.*, 147 F. Supp. 3d at 822 (using MERRIAM-WEBSTER dictionary to interpret insurance policy

of the term "rent" contemplates the payment of money by a tenant or occupant to a landlord at fixed times in exchange for possession and use of property. This is clearly the interpretation of "rent" that Gosch used when she provided her interrogatory answers.

As further evidence of the unreasonableness of Gosch's interpretation of "rent," her interpretation would render section (c)(1) of the "domestic partner" definition meaningless surplusage, which is forbidden by contract interpretation rules. *The Phoenix Ins. Co.*, 147 F. Supp. 3d at 822. The Policy, in part, defines "domestic partnership" as "sharing in domestic responsibilities for the maintenance of the household." SOF 50 (Doc. 23-2). If a person's sharing "in domestic responsibilities for the maintenance of the household" is "rent," the policy becomes contradictory because "one who pays rent to the named insured" is not a "domestic partner." The only way to interpret the Policy in accordance with Iowa law, as a whole and without creating surplusage, is to find that the term "rent" means the traditional landlord-tenant relationship contemplated by Merriam-Webster's, and as by Gosch when she provided her answers to interrogatories. The word "rent," as used in the Policy, is unambiguous because there is only one reasonable interpretation of the meaning of "rent" that allows the Policy to be construed as a whole, and by Gosch's own admission, when that definition is utilized, she does not pay rent.

There is no genuine dispute as to any material fact regarding whether Gosch and Hicks share in domestic responsibilities for the maintenance of their household. There is no genuine dispute as to any material fact regarding whether Gosch and Hicks have a joint asset. Ultimately, the question is whether Hicks and Gosch share in the responsibility for each other's welfare.

---

and stating "under Iowa law, courts commonly rely on dictionaries in arriving at the ordinary meaning of a term in an insurance policy as it would be understood by a reasonable person.")

There is no genuine dispute as to any material fact that bears on this issue. As such, Safeco is entitled to judgment as a matter of law.

WHEREFORE, Plaintiff Safeco respectfully requests that this Court enter summary judgment in its favor and against Defendant Gosch as follows:

a. Declaring that the Policy provides no liability coverage for the claim in the Underlying Lawsuit;

b. declaring that the Policy provides no more than $20,000 in underinsured motorist coverage to Gosch in these circumstances;[5]

c. awarding Safeco its expenses, costs, and disbursements in prosecuting this action; and

d. granting Safeco such further relief as this Court deems just and proper.

---

[5] Gosch does not contest in her opposition Safeco's argument that any recovery of uninsured motorist coverage under the Policy is limited to $20,000. Consequently, upon finding that the Policy does not provide coverage for her claim against Hicks, the Court should find that Gosch's recovery of underinsured motorist coverage is limited to $20,000.

Respectfully submitted,

*/s/ Bruce A. Moothart*
Bruce A. Moothart, ND Iowa #13698
**SEYFERTH BLUMENTHAL & HARRIS LLC**
4801 Main Street, Suite 310
Kansas City, MO 64112
T: (816) 756-0700
F: (816) 756-3700
bruce@sbhlaw.com

**ATTORNEYS FOR SAFECO INSURANCE
COMPANY OF ILLINOIS**

## CERTIFICATE OF SERVICE

I certify that on the 14th day of February, 2018, the foregoing document was served via

the electronic filing system or U.S. Mail to the following:

John Breitbach
Petrzelka & Breitbach, PC
1000 42nd Street SE A
Cedar Rapids, IA 52403
*Attorneys for Defendant Gosch*

*/s/ Bruce A. Moothart*
Attorney for Plaintiff

10