**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

|  |  |
|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS<br><br>            Plaintiff,<br><br>vs.<br><br>PAUL HICKS and JANE GOSCH,<br><br>            Defendants. | No. C16-0202-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT** |

## I.     INTRODUCTION

This case is presently before me on a motion (Doc. No. 23) for summary judgment by plaintiff Safeco Insurance Company of Illinois (Safeco).  Defendant Jane Gosch has filed a resistance (Doc. No. 26) and Safeco has filed a reply (Doc. No. 29).  I find that oral argument is not necessary.

## II.     PROCEDURAL HISTORY AND RELEVANT FACTS

### A.     Procedural History

This case arises from a motorcycle insurance policy issued to defendant Paul Hicks and a subsequent motorcycle accident involving both Hicks and Gosch.  On December 2, 2016, Safeco filed a complaint (Doc. No. 2) for declaratory judgment establishing its obligations for payment under that policy.  Doc. No. 2.  Hicks failed to appear.  As such, on March 24, 2017, I entered a judgment by default against Hicks.  Doc. No. 13.  On May 12, 2017, I amended the default judgment at Gosch's request to make it clear that it applied only to Hicks.  Doc. No. 20.  The order stated, in relevant part:

Judgment by default is hereby entered against defendant Paul Hicks and in favor of Safeco on Safeco's Complaint for Declaratory Judgment (Doc. No. 2), declaring that:

1. Defendant Paul Hicks may not assert that the policy issued by Safeco to Paul R. Hicks, Motorcycle Insurance Policy Number Z4809468, with a policy period of March 14, 2016, to March 14, 2017, provides coverage for the claims in the case filed by Jane Gosch in the Iowa District Court in and for Linn County, Iowa, styled *Jane E. Gosch v. Paul R. Hicks*, No. LACV086005 (the Underlying Lawsuit).

2. Defendant Paul Hicks may not assert that Safeco is obligated to defend the claims in the Underlying Lawsuit as to liability coverage.

*Id.* at 1-2. On December 15, 2017, Safeco filed its motion for summary judgment.

Neither party filed a jury demand. As such, this case is scheduled for a bench trial beginning November 28, 2018.

### B.    *Relevant Facts*

Except as otherwise noted, the following facts are undisputed:

On March 14, 2016, Safeco issued a Motorcycle Insurance Policy, Policy Number Z4809468, with a policy period of March 14, 2016, to March 14, 2017 (the Policy), to Hicks. On April 22, 2016, Gosch and Hicks were involved in a motorcycle accident (the Accident). Gosch then initiated a lawsuit against Hicks in the Iowa District Court for Linn County styled *Jane E. Gosch v. Paul R. Hicks*, No. LACV086005 (the Underlying Lawsuit). In the Underlying Lawsuit, Gosch alleges that she was riding on the motorcycle with Hicks and he lost control, which caused her to be ejected from the vehicle and suffer bodily injuries.

Hicks is designated as the "named insured" on the Declaration page of the Policy. Gosch claims that she is entitled to payment under the Policy's Liability Coverage. The Liability Coverage section of the Policy contains an exclusion that Safeco will not owe

2

such coverage for a "domestic partner" of Hicks. Safeco contends that this exclusion applies in this case.

Hicks is Gosch's boyfriend and has been since before the Accident. Gosch first met Hicks in May 2013 and has resided with him since June 2013. Hicks and Gosch are not related, nor are they mere roommates. They have a sexual relationship and have since before the Accident. They share a bedroom and have since before the Accident. Hicks' believes that their relationship is "mostly" monogamous.

Gosch and Hicks share household responsibilities and work as a team in a joint effort. They have done so since before the Accident. Gosch does the laundry, vacuuming, cleans, tends the plants, and washes dishes, and has been doing so since prior to the Accident. Hicks mows and trims the lawn. Hicks paid off the mortgage for the home at which Hicks and Gosch reside. Gosch does not pay rent to Hicks but contends that the household services she performs act as rental payments.

Gosch and Hicks jointly own a 2014 Chevy Cruise Diesel, which was purchased before the Accident. Gosch's and Hicks' names both appear on the title and the registration for the vehicle. Both of their names also appear as named insureds on the insurance for the 2014 Chevy Cruise. The loan for the vehicle is in Hicks' name.

Since at least October 5, 2015, six months before the Accident, Hicks has been the primary beneficiary of Gosch's 401(k) account. Gosch listed Hicks as her "boyfriend" on her 401(k) Beneficiary Form as of December 15, 2015. As of November 18, 2014, over one year prior to the Accident, Gosch was listed as Hicks' emergency contact at his employer. Similarly, Hicks is listed as Gosch's emergency contact at her employer. Hicks is listed as a contributor on Gosch's Health Savings Account. They have taken at least two vacations together, one in 2013 and one in 2017.

Additional relevant facts will be discussed as necessary, below.

### III.   *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."  *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.  *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Anderson*, 477 U.S. at 248-49.  The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue."  *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323).  Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there

4

is a genuine issue for trial.  *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).  The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law.  If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587-88.  Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts.  *Id.*  However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses."  *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).  Instead, "the court's function is to determine whether a dispute about a material fact is genuine."  *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV.  DISCUSSION

In its complaint (Doc. No. 2), Safeco requested declaratory relief that (1) it has no obligation to defend or indemnify Hicks in the Underlying Lawsuit and (2) any liability it may have to Gosch is limited to $20,000.  With regard to Gosch, there are two relevant provisions of the Policy – the Liability Coverage provision and the Underinsured Motorist (UIM) Coverage provision.  Safeco argues that Gosch is covered only under the UIM provision and that the Policy's UIM coverage is limited to a maximum of $20,000.

### A.  *Liability Coverage*

Safeco presents two reasons that Gosch is not entitled to payment under the Liability Coverage provision.  First, Safeco claims that the default judgment I entered against Hicks precludes Gosch from satisfying any judgment she obtains against Hicks

5

from Safeco.  Doc. No. 23-1 at 1–2.  Second, Safeco argues that Gosch is excluded from Liability Coverage because she is Hicks' "domestic partner," and had that status at the time of the Accident.

### 1.    *Default judgment*
#### a.    *Parties' arguments*

Safeco argues that Gosch's rights as against Safeco are measured by the rights Hicks has against Safeco, as evidenced by Iowa Code § 516.1.  Doc. Nos. 23-1 at 4; 29 at 2.  Therefore, according to Safeco, Gosch can pursue a claim only to the extent that Hicks has a claim under the Policy.  Doc. No. 23-1 at 5.  Safeco argues that because I entered a default judgment against Hicks—precluding him from asserting an indemnity claim under the Policy—Gosch is also prohibited from asserting any liability coverage. *Id.*  Essentially, Safeco claims that Gosch's rights were extinguished as a matter of law by Hicks' default judgment.  *Id.*

Gosch argues that the default judgment should have no effect on her ability to bring a claim.  Doc. No. 26-1 at 2.  She argues that when I amended the default judgment I indicated that one defendant should not be unfairly impacted by the default of another, which would happen if she was prevented from asserting coverage under the Liability Coverage provision.  *Id.* at 3.  Gosch also argues that Iowa Code § 516.1 is not applicable.  *Id.* at 3.

#### b.    *Analysis*

When exercising diversity jurisdiction, federal courts must apply state law to substantive matters and federal law to procedural matters.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  When a federal court is confronted with an issue of first impression under state law, it must predict, as best it can, how the state's high court would resolve the issue.  *See, e.g., Olympus Aluminum Product, Inc. v. Kehm Enterprises, Ltd.*, 930 F. Supp. 1295, 1310 (N.D. Iowa 1996).  Here, the parties agree that Iowa substantive

6

law applies.  Doc. No. 23-1 at 3–4; Doc. No. 26-1 at 2.

> Iowa Code § 516.1 states,
>
> in [the] event an execution on a judgment against the insured be returned unsatisfied in an action by a person who is injured . . . the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment.

This statue gives a judgment creditor the right to bring suit against an insurance company, but that right accrues only after a judgment has been entered against the insured and is unsatisfied.  *Roach v. Ravenstein's Estate*, 326 F. Supp. 830, 835 (S.D. Iowa 1971). Based on this statute, Iowa courts have held that the injured third party "stands in the shoes of the insured, insofar as the insured's performance of conditions in the policy is concerned."  *Haynes v. Dairyland Mut. Ins. Co.*, 199 N.W.2d 83, 86 (Iowa 1972); *see also Am. Guarantee & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991) ("a judgment creditor is required to stand in the position of his debtor"); *Ferris v. Emp'rs Mut. Cas. Co.*, 122 N.W.2d 263, 265–266 (Iowa 1963) ("the plaintiff's rights are to be measured by those of [the insured] as against the defendant insurer").  The statute allows the third party to sue both the insured and insurer, or to sue the insurer alone.  *Steffens v. Am. Standard Ins. Co. of Wis.*, 181 N.W.2d 174, 177 (Iowa 1970).  It was enacted to provide relief for injured parties in an indemnity insurance situation.  *Id.*

Section 516.1 does not prohibit an injured party from participating in a declaratory action concerning coverage.  *Utica Mut. Ins. Co. v. Stockdale Agency*, 50 F. Supp. 2d 871, 874–75 (N.D. Iowa 1999).  In fact, the statute creates the injured party's independent right to participate in a declaratory action.  Thus, the statute "does not permit the insurer and insured to do anything by litigation or agreement between them alone to abrogate or compromise coverage existing at the time of the accident."  *Id.* at 875 (quoting *Farm & City Ins. Co. v. Coover*, 225 N.W.2d 335, 336 (Iowa 1975)).  As such, "[a]n injured party's standing is not affected by default judgment against the insured." *Mich. Millers Mut. Ins. Co. v. Asoyia, Inc.*, No. 3:11-CV-00006-CFB, 2013 WL

7

11616466, at *3 (S.D. Iowa Nov. 6, 2013), *aff'd* 793 F.3d 872 (8th Cir. 2015).

In *Aid Ins. Co. (Mut.) v. Chrest*, 336 N.W.2d 437 (Iowa 1983), the insurer sought a declaratory judgement that it had no duty to defend or indemnify its insured against an action by the injured party in a shooting incident. *Id.* at 438. The insured pled guilty to a charge of assault, which precluded him from asserting coverage. *Id.* The Court acknowledged that "an injured person's rights in another's liability insurance policy can rise no higher than the rights of the insured." *Id.* at 440. However, the Court went on to hold that simply because the injured party "had no different rights in the policy" than the insured, that does not mean those rights can be defeated on the same basis the insured's rights were defeated. *Id.* Therefore, while issue preclusion applied to the insured, the interest the injured party had in the policy was unaffected. *Id.* at 440–41.[1]

Neither the Iowa state courts nor the Eighth Circuit Court of Appeals appear to have addressed the specific question of whether a default judgment against the insured bars an injured third party from seeking liability coverage under a policy. However, other circuits have. In *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986), an insurer brought a declaratory action against the insured and the injured party to determine its obligations under an automobile policy. *Id.* at 346–47. The injured party filed an answer but the insured failed to respond and a default judgment was entered against the insured. *Id.* at 348. The Third Circuit held that the injured party "should be able to present its case upon the ultimate issues, even if the insured does not choose to participate." *Id.* at 355. The court noted that because the insurer initiated the action and brought the injured party into federal court, "it would be anomalous to hold that the [injured party] should not be given an opportunity to establish their case against [the

---

[1] Safeco argues that because Gosch did not cite this case, there must be a "tacit agreement" that it does not apply to the current situation. Doc. No. 29 at 3 n. 1. That is a silly argument. Whether Gosch cited the case or not, *Chrest* is a decision of the Iowa Supreme Court that is clearly relevant to the analysis of whether, under Iowa law, Hicks' default in this case deprives Gosch of the opportunity to litigate the issue of coverage.

8

insurer] because of a default which they could not prevent." *Id.*

A similar situation occurred in *Penn Am. Ins. Co. v. Valade*, 28 Fed. Appx. 253 (4th Cir. 2002). The insurer brought a declaratory action against the insured and the injured party. *Id.*at 256. The insured failed to answer, the court entered a default judgment, and then the insurer sought summary judgment against the injured party. *Id.* In determining that the injured party had independent standing to defend itself, the Fourth Circuit noted that the injured party was not bound by the default judgment because it was entitled to defend on the merits. *Id.* at 256 n.1.

In light of *Chrest,* and the non-binding but persuasive authorities discussed above, I predict that the Iowa Supreme Court would hold that the entry of a default judgment against the insured in a declaratory judgment action does not bar the injured party from asserting a claim for liability coverage under the insurance policy. As such, the default judgment entered against Hicks does not entitle Safeco to summary judgment against Gosch.

### 2.      *Domestic partner*
#### a.      *Parties' arguments*

Safeco argues that Gosch is excluded from coverage under the Policy because she is Hicks' domestic partner. Doc. No. 23-1 at 5. Safeco contends that the definitions set forth in the Policy apply as a matter of law to the facts surrounding Gosch's and Hicks' relationship. *Id.* at 6–8; Doc. No. 29 at 4. Among other things, Safeco notes that Gosch is at least 18 years old, shares responsibility for her and Hicks' welfare, shares domestic and financial responsibilities, is not Hicks' roommate and does not pay rent, as rent is commonly defined. Doc. Nos. 23-1 at 9; 29 at 7.

Gosch argues that she is not Hicks' domestic partner. She argues that she pays rent by performing household duties rather than paying money and therefore cannot be a domestic partner. Doc. No. 26-1 at 4. She also argues that she and Hicks have "separate financial lives" and that they combined some accounts and property ownership only

9

because she was in financial straits after her first marriage.  *Id.* at 5–8.

### b. Analysis

Safeco cites multiple cases holding that a family member exclusion is enforceable and valid.  Gosch does not dispute such a provision is enforceable.  What she disputes is that the "domestic partner" exclusion applies to her, specifically.  Generally, interpretation of an insurance policy is a question of law for the court to decide.  *Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 471 (Iowa 2016); *Wells Dairy, Inc. v. Travelers Indem. Co. of Illinois*, 241 F. Supp. 2d 945, 960 (N.D. Iowa).  Interpretation becomes a question of fact if it depends on "extrinsic evidence or on a choice among reasonable inferences from extrinsic evidence."  *Wells Dairy*, 241 F. Supp. 2d at 961 (quoting *Jensen v. Jefferson Cty. Mut. Ins. Ass'n*, 510 N.W.2d 870, 871 (Iowa 1994)).

An insurance policy is construed as a whole and the words are given their ordinary, not technical, meaning "to achieve a practical and fair interpretation."  *Wells Dairy*, 241 F. Supp. 2d at 960.  The language of a contract may support summary judgment if the terms are unambiguous, have a definite and precise meaning, present no danger of misconception and there is no reasonable basis for a difference in opinion.  *The Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 822 (S.D. Iowa 2015).  If a term is not defined, it is given its ordinary meaning—that which a reasonable person would give them.  *Farm Bureau Life Ins. Co. v. Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 134 (Iowa 2013).  Undefined words are interpreted in the context of the policy as a whole and to avoid making other parts of the contract "surplusage."  *Phoenix*, 147 F. Supp. 2d at 822.  The intent of the parties at the time the policy was sold controls.  *Just*, 877 N.W.2d at 471.

If the terms in a contract are ambiguous, they are construed against the insurer.  *Wells Dairy*, 241 F. Supp. 2d at 960.  A contract is ambiguous if the terms are "susceptible to two *reasonable* interpretations when the contract is read as a whole."  *Id.* (quoting *Amish Connection v. State Farm Fire and Cas. Co.*, 861 N.W.2d 230, 236 (Iowa

10

2015)) (alteration in original). However, mere disagreement as to the meaning of a term does not establish ambiguity. *Phoenix*, 147 F. Supp. 3d at 822. Courts will not give the words of a policy "a strained or unnatural reading . . . to create ambiguity where there is none." *Wells Dairy*, 241 F. Supp. 2d at 960.

The Policy does not provide liability coverage for domestic partners of the insured.[2] Doc. No. 23-3 at 24–25. It defines "domestic partner" as:

[A] person living as a continuing partner with you and:

    a.    is at least 18 years of age and competent to contract;

    b.    is not a relative; and

    c.    shares with you the responsibility for each other's welfare, evidence of which includes:

        (1)    the sharing in domestic responsibilities for the maintenance of the household; or

        (2)    having joint financial obligations, resources, or assets; or

        (3)    one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

Domestic partner does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

Doc. No. 23-3 at 22. The parties agree that Gosch is at least 18, competent to contract and is not a relative of Hicks. They agree that Gosch and Hicks have been living together since June 2013 and that Hicks is Gosch's boyfriend. However, the parties disagree on

---

[2] The policy states: "We do not provide Liability Coverage for . . . bodily injury to you or any family member." Doc. No. 23-3 at 24–25. The term "you" includes domestic partners residing in the same household. *Id.* at 22. Gosch and Hicks live in the same household.

two points: whether Gosch pays rent within the meaning of the policy and whether the circumstances of their co-habitation are sufficient to meet the third requirement, sharing responsibility for each other's welfare.

### i.      Rent

Safeco argues that Gosch does not pay rent because she does not pay money to live in the house and does not have a formal lease agreement. Gosch does not dispute either of those facts. However, she argues that she performs household duties in exchange for living at the house and that this qualifies as "paying rent" under the policy. Therefore, she cannot be a domestic partner.

The term "rent" is not defined in the policy, so I must use its ordinary meaning within the context of the policy as a whole. Courts commonly refer to dictionaries when searching for the ordinary meaning of a term. *Farm Bureau*, 831 N.W.2d at 134. Merriam Webster Dictionary defines "rent" as "[a] usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof; *especially*; an agreed sum paid at fixed intervals by a tenant to the landlord." *Rent*, Merriam Webster, https://www.merriam-webster.com/dictionary/rent (emphasis in original). An additional definition is "the amount paid by a hirer of personal property to the owner for the use thereof." *Id.* Black's Law Dictionary defines rent as "consideration paid, usu. periodically, for the use or occupancy of property." *Rent*, Black's Law Dictionary. The verb "pay" is defined as "to give money for a good or service that one buys. *Pay*, Black's Law Dictionary. "Consideration" is defined broadly, as "something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promise." *Consideration*, Black's Law Dictionary.

I must also interpret the term so as not to make any other part of the Policy superfluous. The Policy states that evidence of a domestic partnership includes evidence that the two people share domestic responsibilities for maintenance of the household. If such domestic responsibilities (e.g., cleaning the house, doing laundry or grocery

shopping) were to qualify as rent then such activities could not also be evidence of a domestic partnership. Therefore, based on the context of the Policy as a whole and the dictionary definitions, I find that the ordinary meaning that a reasonable person would understand of "one who pays rent" means one who pays money in exchange for use and occupancy of the property. This definition prevents other parts of the Policy from becoming superfluous. It is not reasonable that Safeco and Hicks, at the time the Policy was sold, intended "rent" to include the very activities that would make someone a domestic partner. Because it is undisputed that Gosch did not pay Hicks money as consideration for residing in the house, I find as a matter of law that she is not excluded from being a domestic partner on grounds that she paid rent.

### *ii.     Sharing responsibility for each other's welfare*

To establish a domestic partnership, Safeco must show that Gosch and Hicks share "responsibility for each other's welfare." According to the Policy, "evidence" of such shared responsibility "includes" the following:

(1)     the sharing in domestic responsibilities for the maintenance of the household; or

(2)     having joint financial obligations, resources, or assets; or

(3)     one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

Doc. No. 23-3 at 22.

The word "includes" can either enlarge the meaning of a phrase or act as a restriction. *TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 713 (Iowa 2002). Generally, "includes" denotes a general class, "some of whose particular instances are those specified in the definition." *Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 837 -38 (Iowa 2009). The word "or" can either be disjunctive

or conjunctive, depending on the context of the phrase in the policy as a whole.  *TLC*, 638 N.W.2d at 708.

Based on the context of the Policy as a whole, "evidence" appears to be the general class and the listed examples are only some of the particular instances that can show a person is a domestic partner.  The use of the word "or" supports this interpretation and is also used in a disjunctive way, meaning not all of the evidence listed must be present for someone to be considered a domestic partner.  *See Amish Connection*, 861 N.W.2d at 240–41 (finding that the use of the word "or" signified that if one coverage limitation applied, it did not matter whether the property loss also fell within a category that was covered).

Safeco argues that the disjunctive "or" means that if just one of the examples applies, then the person will be considered a domestic partner.  Doc. No. 29 at 4.  This would mean that if two people had a single joint asset, they could be domestic partners even if every other domestic responsibility, financial obligations or resources were separate.  *Id*. at 5.  I find that this interpretation is unreasonable and not supported by the context of the definition as a whole.  The key consideration is sharing responsibility for each other's welfare.  This is an ambiguous phrase, therefore I must construe it against the insurer.  By using "includes," the policy invites consideration of other evidence even if none or all of the listed examples apply, which requires a totality of circumstances analysis.  I find, then, that evidence of one example does not automatically make someone a domestic partner.  In order to establish a domestic partnership, all of the facts surrounding Gosch's and Hicks' relationship must be considered in combination to determine whether they shared responsibility for each other's welfare.

As noted earlier, many of the relevant facts concerning Gosch's and Hicks' relationship are undisputed.  Gosch currently resides with Hicks and has lived with him for about four years, since June 2013.  Hicks is Gosch's boyfriend and they have been in a sexual relationship while living together.  Gosch does laundry, vacuuming, cleaning, dishes and other chores around the house.  Hicks mows and trims the lawn, makes minor

14

house repairs and pays the mortgage on the house. He typically buys bulk groceries and some household supplies and Gosch buys non-bulk groceries and other household supplies.

Gosch's and Hicks' names are both on the title, registration and insurance policy of a 2014 Chevy Cruise Diesel.[3] The loan for the car is in Hicks' name. Hicks is the primary beneficiary on Gosch's 401(k) and Gosch is the primary beneficiary on Hicks' life insurance policy, for which she pays the premiums.[4] They are also each other's emergency contacts. Hicks is a contributor on Gosch's Health Savings Account. Hicks has met Gosch's family and they have taken at least two vacations together. All of these facts support a finding that Gosch and Hicks are domestic partners.

However, some undisputed facts arguably suggest otherwise. Hicks is the sole owner of the house they both live in. Gosch makes the payments on the 2014 Chevy loan using automatic withdrawal from one of her own checking accounts.[5] Gosch is not a primary driver on any of Hicks' other vehicles. Gosch's ex-husband and daughter are the beneficiaries for her life insurance policy, not Hicks. Hicks does not have any joint

---

[3] Gosch argues that the only reason she shares financial responsibility for the vehicle is because her previous marriage ended badly and she and her ex-husband had to file for bankruptcy and their house was foreclosed upon. Because of these issues, she could not get a loan. Doc. Nos. 26-1 at 5; 26-4 at 4, 31. Even assuming this is accurate, I agree with Safeco that the reasoning behind the joint obligation is immaterial. The existence of a joint obligation qualifies as evidence of a domestic partnership.

[4] Gosch admitted Safeco's statement that she is a beneficiary. Doc. Nos. 23-2 at 6; 26-2 at 4. However, in her own statement of facts she said that she is not a beneficiary of the life insurance policy. Doc. No. 26-3 at 3. Safeco disputes that and cites Gosch's affidavit which says she is in fact a beneficiary. Doc. No. 26-4 at 32. Because she admitted the original statement and the citation in her additional statement of material facts (Doc. No. 26-4 at 28) does not support her contention, I find that it is undisputed she is a beneficiary of Hicks' life insurance.

[5] Gosch cites her deposition testimony (Doc. No. 26-4 at 6–7, 18) and bank records showing the deductions (*Id.* at 46–47). She also cites a handwritten note saying Gosch will make payments on the vehicle. Doc. No. 26-4 at 45. Safeco does not dispute that the car payments are made by automatic withdrawal from one of Gosch's accounts. Doc. No. 30 at 4.

accounts or credit cards with Gosch and they have separate email accounts. Gosch is also not a beneficiary under Hicks' will[6] or his 401(k). Gosch has her own, separate health insurance and does not have access to Hicks' bank accounts. They do not consult each other about their spending habits. Gosch does not pay for house repairs. Hicks loaned $1,000 to Gosch to help buy presents for her children, but both parties treated it as a loan, which Gosch repaid. Hicks has not paid any of Gosch's medical bills.[7]

Other potentially relevant facts are in dispute, at least to some extent. Gosch claims that her own financial life and Hicks' financial life are kept separate, citing only her own affidavit (Doc. No. 26-4 at 32). A conclusory affidavit, that which presents a statement devoid of specific factual allegations, cannot create a genuine issue of material fact. *Marsh v. Hog Slat, Inc.*, 79 F. Supp. 2d 1068, 1073 (N.D. Iowa 2000). Gosch's affidavit on this point says nothing more than that she believes their financial lives are separate. Doc. No. 26-4 at 32.

Gosch also claims that she and Hicks have not declared themselves to be in a domestic partnership nor have they held themselves out as such. Doc. No. 26-3 at 6. Safeco argues that Gosch's citation to the record does not support this fact. Doc. No. 30 at 13. Gosch cites to her deposition, during which she testified that she and Hicks have never made a "declaration of domestic partnership or similar declaration with an employee or government entity." Doc. No. 26-4 at 10. This supports Gosch's statement.

In her answers to interrogatories Gosch stated that the only joint financial obligations she shares with Hicks are the Chevy Cruise and the life insurance policy. Doc. No. 23-3 at 111. Safeco points to these facts, along with the parties' joint responsibilities for purchasing groceries and Hicks' contributions to Gosch's Health

---

[6] Gosch does not have a will. Doc. No. 26-4 at 31.

[7] Hicks also states that he probably has not paid for any of her medications, unless he picked them up and she reimbursed him for it, but there is no evidence to confirm whether or not he actually picked up medications. Doc. No. 26-4 at 28.

16

Savings account. Thus, while there are clearly some joint financial obligations, there are others that are not jointly held.

Gosch states that Hicks is solely responsible for paying all of the household utilities, again citing her own deposition testimony. Doc. No. 26-3 at 1. Safeco argues that her evidentiary citation does not support the statement, but cites no additional evidence. Doc. No. 30 at 2. Gosch testified that her name is not on any of the utilities or cable bills. Doc. No. 26-4 at 12. Hicks' testimony confirms that her name is not on any of the utility bills. *Id.* at 24–25. Indeed, Safeco has admitted that Hicks "is the only one on the bills for the house" and "pays all of those bills." Doc. No. 30 at 5.

Gosch claims that Hicks cannot use any of her debit cards. Safeco asserts that the evidence does not support this statement, but does not cite any evidence to the contrary. Doc. No. 30 at 2. In any event, both parties agree that Hicks is not listed on Gosch's accounts. Gosch also states that Hicks cannot use either of her two checking accounts, but her citation to the record confirms only that two checking accounts exist. Doc. No. 26-4 at 18. The cited evidence does not say anything about whether Hicks has access to those accounts.

Gosch claims that Hicks considers the personal property in the house to be his. However, she cites Hicks' deposition, which only states that Gosch does not pay for any repairs to the water heater. Doc. No. 26-4 at 27. This is not sufficient to support the statement that all the items in the house belong to Hicks. In fact, Safeco points out that Hicks stated he and Gosch share items that they buy at Sam's Club. *Id.* at 25.

Gosch claims that any vacation costs are split individually and cites her own deposition testimony. Doc. No. 26-4 at 15–16. In her deposition, Gosch stated that when they met friends in the Dominican Republic, Hicks "charged" the cost of the hotel. *Id.* When they went to New Orleans, she said everything was "put into a pot" to pay for. *Id.* Safeco does not cite any citations, but only argues that these statements do not support the statement that Hicks and Gosch split the cost of vacations. The deposition testimony is unclear as to who paid what for those vacation costs.

17

In light of the Policy's definition, I find that the undisputed facts overwhelmingly, and as a matter of law, demonstrate that Gosch was Hicks' "domestic partner" at the time of the Accident. Gosch did not pay rent, was not Hicks' relative or mere roommate, was at least 18 years of age and was competent to contract. The remaining consideration is whether Gosch "share[d] with [Hicks] the responsibility for each other's welfare." Doc. No. 23-3 at 22.

As explained above, the Policy lists certain, non-exclusive factors for assessing the shared-responsibility requirement. Those factors include whether the parties "shar[ed] in domestic responsibilities for the maintenance of the household" and "had joint financial obligations, resources, or assets." *Id*. The undisputed facts of record satisfy both of these factors. As for domestic responsibilities, Gosch performed some household chores while Hicks performed others. Gosch purchased some groceries and supplies while Hicks purchased others. This is not a situation in which two individuals resided together but each took care of his or her own needs. Instead, domestic responsibilities were shared.

Likewise, it is undisputed that Gosch and Hicks had joint financial obligations, resources, or assets. They jointly own the 2014 Chevy Cruise. While the loan for that vehicle is in Hicks' name, Gosch makes the payments. Hicks is the primary beneficiary of Gosch's 401(k) account and Gosch is the primary beneficiary on Hicks' life insurance policy (for which Gosch pays the premiums). Hicks contributes to Gosch's Health Savings Account.

All of these undisputed facts existed in the context of a romantic relationship between Gosch and Hicks. The couple had been living together for nearly three years before the Accident, shared a bedroom and had a sexual relationship. Given the nature of their relationship, their shared domestic responsibilities and joint financial obligations and resources, no reasonable finder of fact could conclude that Gosch and Hicks did not share responsibility for each other's welfare.

18

Gosch's arguments to the contrary are based largely on the fact that there could be even more evidence establishing a domestic partner relationship. For example, Gosch notes that she and Hicks made no formal declaration of domestic partnership with an employer or government entity. She also argues that the couple's finances could have been even more intertwined. These propositions are true, but the Policy definition requires neither a formal declaration nor that *all* accounts, obligations and assets be held jointly. Here, Gosch and Hicks lived together as a couple, shared domestic responsibilities and held some assets or obligations jointly. Virtually any domestic partner arrangement could include even more evidence that the partners share responsibility for each other's welfare. The lack of additional evidence does not detract from the conclusion that the undisputed facts in the summary judgment record satisfy the Policy's definition.

As a matter of law, Gosch was Hicks' "domestic partner," within the meaning of the Policy, at the time of the Accident. As such, she is subject to the Policy's exclusion and is not entitled to liability coverage. Safeco's motion for summary judgment will be granted on this issue.

### B.     *UIM Coverage*

Safeco states that while Gosch is not entitled to liability coverage, she is entitled to UIM coverage limited to "the amount set forth by the Financial Responsibility Law of Iowa.". Doc. No. 23-1 at 10. Thus, Safeco argues that because Gosch is excluded from liability coverage as Hicks' domestic partner, her coverage is limited to $20,000, as specified in Iowa Code § 321A.21. *Id.* at 11–12. Gosch does not present any argument contradicting the UIM limit, instead relying on her argument that she is not excluded under the "domestic partner" definition. Doc. No. 26-1.

The Policy states that Safeco's maximum liability for all damages under the UIM provision is the minimum amount specified in the Financial Responsibility Law of Iowa. Doc. No. 23-3 at 31. The minimum limit specified is $20,000. Iowa Code §

321A.21(2)(b); *see also Krause v. Krause*, 589 N.W.2d 721, 726 (Iowa 1999). Therefore, I agree with Safeco that Gosch is entitled to UIM coverage under the Policy, with her recovery being limited to $20,000.

## V. CONCLUSION

For the reasons set forth herein, Safeco's motion (Doc. No. 23) for summary judgment is **granted**. A declaratory judgment is hereby entered in favor of Safeco and against Gosch, as follows:

1. **It is hereby declared** that Safeco's Motorcycle Insurance Policy Number Z4809468, with a policy period of March 14, 2016, to March 14, 2017 (the Policy), provides no liability coverage for the claim Gosch has asserted against Hicks in *Jane E. Gosch v. Paul R. Hicks*, No. LACV086005 in the Iowa District Court for Linn County.

2. **It is also hereby declared** that the Policy provides no more than Twenty Thousand Dollars ($20,000.00) in Underinsured Motorist Coverage to Gosch for any damages she incurred as a result of the motorcycle accident that took place on or about April 22, 2016.

3. The costs of this action are assessed against the defendants.

4. The trial of this matter, scheduled to begin November 28, 2018, is hereby **canceled**.

5. The Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 17th day of April, 2018.

_____
Leonard T. Strand, Chief Judge

20